IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 13-20033-07-KHV |
| JORGE URIEL DELGADO-OVALLE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On January 10, 2014, a jury found defendant guilty of one count of conspiracy to encourage illegal aliens to reside in the United States for commercial advantage and private financial gain in violation of 18 U.S.C. § 371. This matter is before the Court on Defendant's Motion For Arrest Of Judgment & Judgment Of Acquittal (Doc. #220) and Defendant's Motion For A New Trial (Doc. #218), both filed January 24, 2014. For reasons stated below, the Court overrules defendant's motions.

**I.    Motion For Arrest Of Judgment**

Defendant argues that the Court should arrest judgment because the indictment does not charge an offense. See Fed. R. Crim. P. 34(a)(1). Under Rule 34, the Court must arrest judgment if "(1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Id. Defendant maintains that the indictment alleges merely that defendant joined the conspiracy by "agreeing to be employed" by Advantage Framing, which is insufficient to charge a violation of 8 U.S.C. § 1324(a)(iv). Defendant went to trial only on the

conspiracy count which does not require a substantive violation of Section 1342(a)(iv).[1] The indictment properly alleges the elements of the crime of conspiracy under 18 U.S.C. § 371. Accordingly, the Court overrules defendant's motion for arrest of judgment.

## II.     Motion For Judgment Of Acquittal

In considering a motion for judgment of acquittal, the Court cannot weigh the evidence or consider the credibility of witnesses. See Burks v. United States, 437 U.S. 1, 16 (1978). Rather, the Court must view the evidence in the light most favorable to the government and determine whether the record contains sufficient evidence from which a jury might properly find defendant guilty beyond a reasonable doubt. United States v. White, 673 F.2d 299, 301 (10th Cir. 1982) (standard reflects "deep respect" for fact-finding function of jury). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that can be drawn therefrom. Id. Acquittal is proper only if the evidence implicating defendant is nonexistent or is so meager that no reasonable jury could find guilt beyond a reasonable doubt. Id.; see United States v. Brown, 995 F.2d 1493, 1502 (10th Cir. 1993) (evidence supporting conviction must be substantial and raise more than mere suspicion of guilt), overruled on other grounds by United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001).

Defendant argues that the government presented insufficient evidence that he was guilty of conspiracy, either as a principal or as an aider and abettor. Defendant argues that agreeing to hire undocumented workers is not an agreement to encourage unlawful residence. See Defendant's

---

[1] To allege a conspiracy under Section 371, the indictment must allege (1) the existence of an agreement to violate the law, (2) that defendant knew the essential objective of the conspiracy, (3) that defendant knowingly and voluntarily participated in the conspiracy, (4) that an overt act was committed in furtherance of the conspiracy, and (5) that the co-conspirators were interdependent. United States v. Bader, 678 F.3d 858, 881 n.13 (10th Cir. 2012).

<u>Memorandum Of Law In Support Of His Motion Of Judgment Of Acquittal</u> (Doc. #261) filed January 24, 2014 at 2. In ruling on a similar issue on defendant's pretrial motion to dismiss, the Honorable Judge J. Thomas Marten noted as follows:

> The court agrees with the Eleventh Circuit that employment of undocumented individuals is not sufficient by itself to be encouragement. However, employment that is coupled with aggravating factors consistent with knowingly assisting such persons in maintaining illegal residence qualifies as illegal encouragement under § 1324(a)(1)(A)(iv).
>
> The court now applies this standard to the facts alleged by the government. According to the government, Ovalle was a framing crew leader who managed a team of undocumented workers for Advantage. These workers used fake names and were apparently given false identification documents, facts the government alleges were known to management of Advantage, which shuffled out unlawful employees when the government learned of them. The government also alleges that Advantage intentionally failed to fill out and submit employment forms for several of its undocumented workers. Ovalle cashed checks written to him by Advantage, and he distributed the money to his crew. According to the indictment, these workers, including Ovalle, were told that if OSHA investigators conducted any inspections, they were to lie and tell the investigators that they worked for a subcontractor. The undocumented workers also allegedly ran drills for running and hiding from immigration officials.

<u>Memorandum And Order</u> (Doc. #182) at 15.

Defendant concedes that "his goal was to employ undocumented workers." <u>Defendant's Reply To The Government's Response To The Motion For Judgment Of Acquittal And Supplemental Argument Regarding Jury Instructions</u> (Doc. #253) filed March 18, 2014 at 11. Viewing the evidence in a light most favorable to the government, to encourage workers to maintain illegal residence in the United States, defendant conspired to take steps beyond mere employment of undocumented workers. The evidence at trial showed that (1) defendant was unlawfully present in the United States; (2) James Humbert, Kimberly Humbert and Charles Stevens worked with framing crew leaders including defendant and his brother to employ crew members without regard

-3-

to their immigration status; (3) defendant received checks from Advantage and paid his crew members in cash; (4) defendant knew that his crew members were unlawfully present in the United States; (5) at the request of James Humbert, defendant allowed Jose Anuar Garcia-Rosas, who was not legally present in the United States and could not get liability insurance because he had no social security number, to use or "work under" defendant's insurance; (6) Advantage issued checks to defendant for work performed by Garcia-Rosas; and (7) Garcia-Rosas cashed the checks issued to defendant and in turn, paid defendant ten per cent as a fee for helping him.

The above evidence is more than sufficient to find defendant guilty as either a principal or an aider and abettor of the charged conspiracy.[2] See United States v. Clark, 717 F.3d 790, 805 (10th Cir. 2013) (to support conspiracy charge, evidence need not show express agreement); United States v. Sells, 477 F.3d 1226, 1236 (10th Cir. 2007) (agreement requirement may be satisfied entirely through circumstantial evidence); see also United States v. Hamilton, 587 F.3d 1199, 1207 (10th Cir. 2009) (connection of defendant to conspiracy need only be slight, provided sufficient evidence establishes that connection beyond a reasonable doubt). Defendant is not entitled to a judgment of acquittal based on the sufficiency of the evidence.[3]

---

[2] To carry its burden to show that defendant was a principal in the conspiracy, the government was required to prove (1) an agreement to violate the law, (2) defendant knew the essential objective of the conspiracy, (3) defendant knowingly and voluntarily participated in the conspiracy, (4) an overt act was committed in furtherance of the conspiracy, and (5) the co-conspirators were interdependent. Bader, 678 F.3d at 881 n.13. To carry its burden to show that defendant aided and abetted the charged conspiracy, the government was required to prove (1) the existence of a conspiracy; (2) defendant associated himself with the conspiracy; and (3) defendant acted with the intent to bring about the success of the conspiracy. United States v. Temple, 433 Fed. Appx. 630, 634 (10th Cir. 2011); United States v. Langston, 970 F.2d 692, 705 (10th Cir. 1992).

[3] In his reply brief in support of his motion for judgment of acquittal, defendant challenges the accuracy of the jury instruction on aiding and abetting. The Court addresses
(continued...)

**III.    Motion For A New Trial**

Rule 33, Fed. R. Crim. P., provides that the Court may grant a motion for a new trial "if the interest of justice so requires." A motion for new trial under Rule 33 is not regarded with favor and is granted with great caution. United States v. Herrera, 481 F.3d 1266, 1269-70 (10th Cir. 2007); United States v. Trujillo, 136 F.3d 1388, 1394 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. United States v. Cesareo-Ayala, 576 F.3d 1120, 1126 (10th Cir. 2009).

A.    Government Disclosure Of Evidence

Defendant argues that he is entitled to a new trial because the government did not disclose evidence that would exculpate him and impeach the credibility of government witnesses. To establish a violation of the principles enunciated in Brady v. Maryland, 373 U.S. 83 (1963), defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense. United States v. Wooten, 377 F.3d 1134, 1142 (10th Cir. 2004); United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994). The materiality element requires defendant to show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Brooks, 727 F.3d 1291, 1300 n.7 (10th Cir. 2013) (quoting Knighton v. Mullin, 293 F.3d 1165, 1172 (10th Cir. 2002)). Impeachment evidence falls within Brady when the reliability of a given witness may determine defendant's guilt or innocence. See United States v. Bagley, 473 U.S. 667, 676

---

$^3$(...continued)
defendant's challenge to the jury instruction below as part of his motion for new trial. See infra text, Section III, D. Because the Court adequately instructed the jury on aiding and abetting, defendant is not entitled to acquittal on this ground.

(1985); Giglio, 405 U.S. at 154. Impeachment evidence is material where the witness at issue "supplied the only evidence linking the defendant to the crime" or "where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995), cert. denied, 516 U.S. 1165 (1996); see Avellino, 136 F.3d at 256 (impeachment evidence material where witness supplies only evidence linking defendant to crime).

Defendant argues that the government did not disclose that the Humberts owed the State of Kansas $378,425.00 in back taxes or that the Humberts had civil judgments against them totaling $192,440.46.[4]  Before trial, defense counsel knew that the Humberts and Stevens had not paid certain taxes, see Mr. Delgado-Ovalle's Motion To Exclude Evidence & Witnesses (Doc. #195) filed January 6, 2014 at 8, but counsel declined to examine the Humberts or Stevens on this matter.  In addition, the Court ordered the government to let defense counsel meet with James Humbert, Kimberly Humbert and Charles Stevens before they testified.  Defendant has not explained whether counsel availed himself of this opportunity or why this opportunity did not cure any potential prejudice.  Defendant has not shown that the government suppressed evidence regarding back taxes or civil judgments or that such evidence was material to his defense.

Defendant argues that the government did not disclose that law enforcement arrested the Humberts and Stevens for violating their bond conditions or that Stevens was accused of witness tampering.  Defense counsel received a copy of the government's motion to revoke bond for the Humberts and Stevens.  See United States' Motion To Revoke Bond Of Defendants James Humbert,

---

[4] Defendant has only presented documentation of one civil judgment in the amount of $78,439.46.  See Doc. #223.

Kimberly Humbert, And Charles Stevens II (Doc. #79) filed June 21, 2013. The government's motion sets forth the factual circumstances of the alleged bond violations. Accordingly, defendant has not shown that the government suppressed evidence related to the alleged bond violations. Defendant also does not explain how such evidence was material to his defense.

Defendant next argues that the government did not timely disclose evidence that in September and October of 2013, James Humbert and Stevens told police that they did not think defendant had participated in any illegal activity. Defendant notes that the government disclosed the statements the day before trial. Defense counsel had an opportunity to review the statements before the witnesses testified, however, and he cross examined both witnesses about the statements. At trial, James Humbert explained that he did not know why defendant was being charged because Advantage recognized defendant's brother Ivan as the head of their framing company which worked for Advantage. Similarly, Stevens testified that Ivan was the contact for Advantage and that he thought that defendant was just on the framing crew and not the person with the insurance. In light of the trial testimony, defendant has not shown how the prior statements by James Humbert and Stevens were favorable to him or how prior disclosure would have led to any materially different examination of the witnesses. The Court therefore overrules defendant's motion for new trial regarding the government's failure to disclose the statements of James Humbert and Stevens.[5]

Defendant argues that government did not disclose that one of its witnesses, unindicted co-conspirator Jose Anuar Garcia-Rosas, was illegally present and continuing to work illegally in the

---

[5] As to any statements by James Humbert, Kimberly Humbert and Charles Stevens, the Court ordered that the government make these witnesses available to defense counsel before they testified. Defendant has not explained whether counsel availed himself of this opportunity or why this opportunity did not cure any potential prejudice from the government's alleged failure to disclose this information earlier.

United States. Defendant notes that less than 12 hours before testimony by Garcia-Rosas, the government disclosed information that he was illegally in the country. Defendant has not shown that the government suppressed evidence that Garcia-Rosas was working illegally in the United States because he has not shown when the government learned of this fact. In any event, defense counsel had an opportunity to cross examine Garcia-Rosas about this fact and it does not appear that prior disclosure would have materially altered counsel's examination of the witness. The Court therefore overrules defendant's motion for new trial on this ground.[6]

Defendant argues that the government failed to disclose information from a meeting between government counsel and Kimberly Humbert the night before trial. Defendant speculates that based on the testimony of Kimberly Humbert, she most likely gave the government information that would tend to exclupate him or that at least she provided information that contradicted her earlier statements to law enforcement. At trial, government counsel represented that Kimberly Humbert provided no information that was subject to disclosure under Brady. Defendant has not satisfied his burden to show that Kimberly Humbert provided the government information that was favorable to him or that any such evidence was material. See United States v. Erickson, 561 F.3d 1150, 1163 (10th Cir. 2009) (Brady claim fails if existence of favorable evidence merely suspected). Accordingly, the Court overrules defendant's motion for new trial on this ground.

---

[6] Defendant also argues that because the government did not disclose that Garcia-Rosas would be a witness until less than 48 hours before trial, he did not have meaningful use of additional information on Garcia-Rosas such as his use of fake identification to cash checks. As the Court explained at trial, defendant did not show that the government's disclosure of Garcia-Rosas as a witness was untimely. In his motion for new trial, defendant has not shown how the government's timing of its disclosure of its witness list constitutes a Brady violation.

B.  Court's Comments During Counsel's Examination Of Jury Panel

The Court is vested with wide discretion in the conduct of voir dire. See United States v. Lambinus, 747 F.2d 592, 598 (10th Cir. 1984). Defendant argues that the Court unnecessarily impugned the defense by repeatedly interjecting during defense counsel's examination of the jury panel and threatening to explain the grand jury process. During voir dire, defense counsel suggested that based on the presumption of innocence, the jurors should start with the assumption that the government was prosecuting another innocent man. The Court interjected to explain that counsel's comment was a mischaracterization of the facts and law and instructed the panel not to respond to the question. Shortly thereafter, defense counsel suggested that just because defendant was a suspect did not mean that the government had presented any proof that he had done anything illegal. The Court again interjected and asked counsel whether he wanted the Court to explain the grand jury process and suggested that counsel was starting to open doors to areas where he did not want to go. The Court's comment had little prejudicial effect on defendant, if any, and was necessary so that defense counsel did not continue to mischaracterize the pre-indictment phase of the case. Furthermore, any potential prejudice was cured by the Court's instructions that comments or rulings by the Court were not intended to express any opinion or suggestion as to how the jury should resolve any of the factual issues in the case. The Court overrules defendant's motion for new trial based on the Court's comments during voir dire.

C.  Admission Of Testimony On Defendant's Immigration Status

Defendant argues that the Court improperly admitted testimony about defendant's immigration status. At trial, defense counsel asked James Humbert about his statement to law enforcement that "he did not think Mr. Ovalle had engaged in any criminal activity." Defendant's

Memorandum Of Law In Support Of His Motion For A New Trial (Doc. #219) at 8. The Court held that counsel's question opened the door for the prosecution to ask James Humbert if he was aware that defendant was not legally present in the United States. See Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005) (when party opens door to topic, admission of rebuttal evidence on topic permissible). By suggesting that defendant had not engaged in criminal activity, counsel opened the door to questioning about defendant's immigration status. In addition, it appears that defendant's immigration status was evidence intrinsic to the charged conspiracy to encourage illegal aliens to reside in the United States. For these reasons, the Court overrules defendant's motion for new trial on this ground.

### D. Jury Instructions

In reviewing challenges to jury instructions, the Court must look at the jury instructions as a whole and determine if the jury likely was misled. See United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994). A new trial is not appropriate where the instructions as a whole properly state the law and provide the jury an "intelligent, meaningful understanding of the applicable issues and standards." United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997) (quoting United States v. Laughlin, 26 F.3d 1523, 1528 (10th Cir. 1994)). The Court will grant a new trial only if it has "substantial doubt that the jury was fairly guided." Smith, 13 F.3d at 1424 (quoting Mullins, 4 F.3d at 900).

Defendant argues that he was entitled to a jury instruction that "merely agreeing to employ illegal aliens is insufficient to violate the statute." Defendant's Memorandum Of Law In Support Of His Motion For A New Trial (Doc. #219) at 9-10. The Court rejected defendant's proposed instruction because it did not explain how it related to the charged conspiracy or state that knowingly employing illegal aliens could constitute an overt act in furtherance of a conspiracy to encourage

illegal aliens to reside in the United States. As the jury instructions noted, the overt act did not have to be the crime which was the objective of the conspiracy and in fact, the overt act need not be a crime at all. Instructions To The Jury (Doc. #206), No. 13. In the context of this case, which involved a single count of conspiracy, defendant's proposed instruction that "merely agreeing to employ illegal aliens is insufficient to violate the statute" would have been confusing and misleading. "Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." United States v. Wood, 207 F.3d 1222, 1235 (10th Cir. 2000) (quoting United States v. Pack, 773 F.2d 261, 267 (10th Cir. 1985)). For these reasons, the Court overrules defendant's motion for new trial based on the denial of his proposed instruction.

Defendant also claims that he is entitled to acquittal or a new trial because the Court did not properly instruct the jury on aiding and abetting a federal crime. Defendant argues that in light of Rosemond v. United States, 134 S. Ct. 1240 (2014), the Court incorrectly stated the law related to the crime of aiding and abetting. See Defendant's Reply To The Government's Response To The Motion For Judgment Of Acquittal And Supplemental Argument Regarding Jury Instructions (Doc. #253) at 6. Defendant argues that the instructions (1) did not require the jury to find that he took an "affirmative act in furtherance of the conspiracy" and (2) incorrectly stated that the jury could convict defendant as an aider and abettor even if he did not know all details of the crime. Id. at 7-8. Defendant did not raise these objections at trial and, in fact, he states that the Court's instruction was correct at the time. See id. at 7-8. Accordingly, the Court may only review the challenged portions of the instructions for plain error. See Fed. R. Crim. P. 51(d)(2).

The Court instructed the jury that to find defendant guilty of aiding and abetting the

-11-

conspiracy, the government must prove beyond a reasonable doubt each of the following elements:

> FIRST: Someone other than defendant committed the crime charged, and
>
> SECOND: Defendant consciously shared the other person's knowledge of the underlying crime and intended to help him or her commit it.

Instructions To The Jury (Doc. #206), No. 16. As part of the same instruction, the Court distinguished the crimes of conspiracy and aiding and abetting by noting as follows:

> Sometimes jurors have difficulty understanding the legal difference between the criminal offenses of "conspiracy" and "aiding and abetting." "Conspiracy" depends and is based on any agreement, unspoken or expressed, whether carried over into a conspiratorial act or not; *whereas "aiding and abetting" depends on a showing of conscious participation in a criminal act, that is, knowingly assisting in the performance of the criminal act charged.* It is the element of "agreement" that distinguishes conspiracy from aiding and abetting.

Id. (emphasis added). Moreover, the Court instructed that every crime involves both act and intent and that the government must prove both elements beyond a reasonable doubt. Id., No. 10. The instructions adequately required the jury to find that defendant took some affirmative act to aid or abet the conspiracy.

In the alternative, the Court finds that any error in failing to instruct the jury that defendant had to take an "affirmative act in furtherance of the conspiracy" did not constitute plain error. Defendant conceded and the trial testimony was undisputed that he committed an affirmative act by employing illegal aliens. At trial, the disputed issue was whether defendant took certain actions (including employing illegal aliens) as part of a conspiracy, or to aid and abet a conspiracy, to encourage illegal aliens to reside in the United States for commercial advantage and private financial gain. In the factual context of this case, by finding defendant guilty as either a principal or abettor, the jury necessarily concluded that defendant employed illegal aliens.

The Court overrules defendant's motion for new trial based on the adequacy of the jury

instructions.

### E. Admission Of Testimony That The Humberts And Stevens Were Indicted

Defendant argues that the Court erred by permitting the government to elicit testimony that the Humberts and Stevens had been arrested and indicted and had their belongings subject to forfeiture. Defendant's Memorandum Of Law In Support Of His Motion For A New Trial (Doc. #219) at 10-11. Defendant argues that such testimony was not relevant and that any probative value of the testimony was substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 401, 403. At trial, government counsel questioned James Humbert whether he was indicted. Defendant objected on relevance grounds. The Court overruled defendant's objection and noted that the question was relevant to witness credibility and the strength of the government's case.

The Court properly found that the evidence was relevant under Rule 401 because witness credibility is always at issue. See United States v. Green, 617 F.3d 233, 251 (3d Cir. 2010). Under Rule 403, the Court has considerable discretion in performing the balancing test. See United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001). Unfair prejudice in the Rule 403 context "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Id. (citing Fed. R. Evid. 403 advisory committee note). Defendant does not explain how the fact that the Humberts and Stevens were indicted has a tendency to suggest a verdict on an improper basis. A jury would reasonably expect that the other members of the same alleged conspiracy would also be charged. The fact that the Humberts and Stevens were indicted does not suggest the result of such charges or that the same result should follow in defendant's case. The Court concludes that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The Court therefore overrules defendant's motion on this ground.

### F. Prosecutor's Closing Argument

Defendant argues that the prosecutor's closing argument relied on evidence outside the record to unnecessarily inflame the jury. Defendant complains that the government improperly suggested that his motive to join the conspiracy was to stay in this country as long as possible so that he would be more likely to earn lawful status. Defendant's Memorandum Of Law In Support Of His Motion For A New Trial (Doc. #219) at 12.

In closing argument, counsel must confine comments to evidence in the record and to reasonable inferences from that evidence. United States v. Lopez-Medina, 596 F.3d 716, 740 (10th Cir. 2010). Defendant argues that neither party introduced evidence of the relationship between the length of his residence in the country and his chances to obtain lawful residence. During closing, however, defense counsel did not object to the prosecutor's comment. In context, the prosecutor did not comment on what is necessary for an individual to earn lawful status. Instead, he noted that in response to a question asking Garcia-Rosas if he was legally authorized to reside in the United States, he said no, "not yet." The prosecutor suggested that Garcia-Rosas and defendant wanted to stay in the United States to improve their chances of remaining here. This was a permissible inference based on the testimony. The prosecutor certainly did not imply that he had personal knowledge about defendant's motives in gaining employment in the United States or helping others to do so. See Lawn v. United States, 355 U.S. 339, 359 n.15 (1958) (implying that prosecutor statements would have been improper if insinuating that they were based on personal knowledge or anything other than trial testimony). The Court overrules defendant's motion for new trial based on the prosecutor's closing argument.[7]

---

[7] Defendant also argues that the prosecutor's argument re-emphasized defendant's immigration status which was irrelevant and prejudicial. As explained above, defense counsel
(continued...)

G. <u>Cumulative Error</u>

Defendant argues that even if any one error was harmless, the combined effect of all of the suggested errors deprived him of a fair trial. The Court finds that the cumulative error analysis does not apply because defendant has not established that any error occurred.

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion For Arrest Of Judgment & Judgment Of Acquittal</u> (Doc. #220) filed January 24, 2014 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that <u>Defendant's Motion For A New Trial</u> (Doc. #218) filed January 24, 2014 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED that sentencing is set for December 9, 2014 at 1:30 PM in Courtroom 476.**

Dated this 24th day of September, 2014 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[7](...continued)
opened the door to questioning about defendant's immigration status. In addition, evidence of defendant's immigration status appears to be intrinsic to the charged conspiracy to encourage illegal aliens to reside in the United States.

-15-